IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 4, 2004 Session

## MARGIE MARIE LYNN, ET AL. v. EXPEDITERS EXPRESS, INC., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 98C-2258      Carol Soloman, Judge**

_____

**No. M2003-01777-COA-R3-CV - Filed February 25, 2005**

_____

Plaintiff sued her employer for misrepresentation relating to health insurance coverage and sought to recover amounts incurred by her husband for medical bills. The trial court found for plaintiff awarding her treble and punitive damages. We reverse the trial court's finding of treble and punitive damages and affirm the trial court's award of a refund to plaintiff for amounts contributed as premiums.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Reversed in Part**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Mathew R. Zenner, Nashville, Tennessee, for the appellants, Expediters Express, Inc., et al.

Paul T. Housch, Nashville, Tennessee, for the appellees, Margie Marie Lynn, et al.

### MEMORANDUM OPINION[1]

In November of 1997, Margie and Johnny Lynn were working for Expediters Express, Inc. ("Expediters") as a husband/wife truck driving team. During that time, John Tulles, president and owner of Expediters, notified his employees of the possibility that health insurance might be offered to employees of Expediters on a group basis. Margie Lynn completed an application for insurance

_____

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

naming her husband as a dependent. It was anticipated that the employees would pay a part of the premium. While the purpose of the deductions are disputed, Expediters withheld a premium deduction from three of Ms. Lynn's weekly paychecks. For the weeks ending November 28 and December 5, 1997, a premium deduction of Forty-Five Dollars and five cents ($45.05) each week was withheld from Ms. Lynn's checks. In her weekly payroll check for December 19, 1997, a premium deduction of One Hundred thirty-Five Dollars and fifteen cents ($135.15) was made for three weeks of insurance premiums. The total withheld for insurance purposes from Ms. Lynn's paychecks was Two Hundred Twenty-Five Dollars and twenty-five cents ($225.25).

According to Ms. Lynn, she had been told by Mr. Tulles that the insurance coverage would go into effect on December 10, 1997. While the Lynns were aware of a problem with Johnny Lynn's health, according to Ms. Lynn, they did not seek medical help until the insurance went into effect. In late December, Johnny Lynn began to seek medical help and was diagnosed with throat cancer. Mr. Lynn incurred medical bills beginning in December of 1997.

There is no dispute that the insurance company declined to provide group coverage for Expediters' employees. Ms. Lynn acknowledged that she was told that in order to be covered, she needed to receive either an insurance card or notice of acceptance from the insurer. She admits that she received no indication from any insurance carrier that her application had been accepted. Mr. Tulles testified that he never told his employees that insurance coverage had been secured, only that Expediters was applying for it. According to Mr. Tulles, the insurance premium deductions were made from employees payrolls because the carrier required advance premiums to accompany the applications. Ms. Lynn, on the other hand, testified that she was told by Mr. Tulles that the policy would be in effect on December 10, 1997. In reliance on this representation, Ms. Lynn testified that her husband incurred medical bills believing they had insurance. The bulk of the medical bills introduced were incurred in March of 1998, while a few appear to have been incurred in December of 1997. A judgment was obtained by Perry Community Hospital against Ms. Lynn for Four Thousand, One Hundred Eight Dollars ($4,108) for medical bills allegedly incurred by her husband.

Ms. Lynn apparently left Expediters' employ in early 1998, and the record does not clearly show that Ms. Lynn was employed with Expediters when many of the bills were incurred. Ms. Lynn did not testify on this issue, but the 1998 W-2 for Ms. Lynn, made an exhibit below, showed a total salary for 1998 of Two Hundred Six Dollars ($206). Mr. Tulles's testimony on this subject was sketchy and uncertain. It appears from the record that Ms. Lynn was not employed by Expediters except for perhaps one to two weeks in 1998.

This lawsuit was initiated by Margie and Johnny Lynn against Expediters and Mr. Tulles alleging conversion of the premiums withheld from paychecks, fraud and negligent misrepresentation, promissory fraud, breach of contract and a violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq.

Prior to the trial, the marriage of Margie and Johnny Lynn was annulled since Johnny Lynn was still married to another woman. At the non-jury trial, plaintiff's counsel non-suited Mr. Lynn's claims, leaving Ms. Lynn as the sole plaintiff.

The trial court found Expediters and Mr. Tulles both liable and assessed damages under several theories. First, the trial court found the premiums of $225 had been converted by defendants, resulting in a treble damage award of $675.00 and prejudgment interest of $135.00. Second, based on a finding of fraud and misrepresentation, the court trebled the amount of the judgment entered against Ms. Lynn on behalf of Perry Community Hospital ($4,108.00) and awarded her $12,624.45. Finally, the court awarded Ms. Lynn $4,108 as punitive damages based upon the fraud and misrepresentation.

Expediters and Mr. Tulles concede that it is appropriate to award Ms. Lynn the amount of premiums withheld plus prejudgment interest. It is error, they contend, to treble that amount. Expediters and Mr. Tulles argue that since there was no false statement by them and no reasonable reliance by Ms. Lynn, the court erred in finding them liable for fraud and misrepresentation with accompanying punitive damages. Lastly, Mr. Tulles argues that since he was acting in his capacity of president of Expediters, he has no individual liability.

### ANALYSIS

We begin with the issue of whether Ms. Lynn justifiably relied upon the alleged misrepresentation because we believe this issue is dispositive of the fraud and misrepresentation claims. It is well established that in order to prevail on a claim of negligent misrepresentation, the plaintiff must establish that there was justifiable reliance on the false representation. *Staggs v. Sells*, 86 S.W.3d 219, 223 (Tenn. Ct. App. 2002). In order to prevail on a claim of fraudulent misrepresentation, the plaintiff must likewise prove that he or she reasonably relied on the misrepresentation. *Allied Sound, Inc. v. Neely*, 58 S.W.3d 119, 122 (Tenn. Ct. App. 2001). Based upon the unique facts of this case, we find that Ms. Lynn is not able to prove that she incurred these bills for her husband in reliance on any representation by Mr. Tulles or Expediters.

First, the cause of the medical bills was not any representation by defendants, but rather it was problems with Mr. Lynn's health. In other words, the medical expenses arising from the cancer treatment would have been incurred whether or not Ms. Lynn had insurance. Ms. Lynn does not contend that medical treatment would not have been sought in the absence of insurance, but only that it was delayed until the presumed effective date of the coverage. Therefore, the bills were not incurred because of defendants' representations. Second, although Mr. Tulles told her that the insurance would become effective December 10, 1997, Ms. Lynn also testified that she was told that she needed to receive some indication of acceptance from the insurance company that admittedly she did not receive.

Third, Ms. Lynn testified that she was told and believed that the insurance would remain in effect only as long as the premiums were paid. It is not contested that Ms. Lynn's premium

-3-

contributions, at best, covered a period from December 10, 1997 (the date she says coverage was to start) through the five (5) weeks she paid the premium, until January 14, 1998. No premiums were deducted in 1998. The medical bills introduced at trial show that the majority of the medical services were not provided during December and January. This further undermines Ms. Lynn's reliance contention. As for the Perry Community Hospital judgment, it is not possible to tell who incurred the charges underlying that judgment or when the charges were incurred. There was no testimony introduced regarding when the expenses underlying the Perry Community Hospital judgment were incurred or what they were for. Based upon the testimony, we have been unable to reconcile the amounts of the judgment with other evidence in the record. Fourth, it is doubtful that Ms. Lynn even worked for Expediters during the 1998 period when many of the medical bills were incurred.

Since we find Ms. Lynn did not justifiably rely on Mr. Tulles' alleged representations about the existence of insurance, we reverse the trial court's finding that defendants are liable for fraud and misrepresentation and the award of damages related to those claims. Since the punitive damages are based upon the trial court's findings of fraud and misrepresentation, the award of punitive damages is reversed as well.

The remaining issue is Expediters' liability for treble damages for conversion. We share the trial court's frustration with the company's behavior. Although defendants do not dispute that Ms. Lynn is owed the premiums, they have not refunded Ms. Lynn this amount. Expediters represented to the court in its answer that "this defendant will tender the full amount of the funds arising from the payroll deductions into the registry of this court for payment to the plaintiff Margie Lynn." This was not done. There is no dispute that the amount withheld from Ms. Lynn is due. While we agree with the award of prejudgment interest, we are unable to find support for the trial court's award of treble damages. Furthermore, we find no basis for holding Mr. Tulles personally liable since he was acting on behalf of Expediters. Therefore, we affirm the award of Two Hundred Twenty-Five Dollars ($225) plus prejudgment interest against Expediters.[2]

The judgment of the trial court as to the awards for fraud and misrepresentation and punitive damages is reversed. The award for treble damages for conversion and the judgment against John Tulles individually is reversed. The judgment awarding $225 plus pre-judgment interest is affirmed. Costs of the appeal are taxed equally to the appellants, Expediters Express et al., and the appellee, Margie Marie Lynn.

_____
PATRICIA J. COTTRELL, JUDGE

---

[2]The record makes passing reference to a payment of One Thousand Dollars ($1,000) by defendants under some sort of settlement agreement that apparently was repudiated. The appellants do not appeal the trial court's failure to give them any credit for this amount.